IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| EDWIN GAGO,<br>       *Petitioner* | CIVIL ACTION |
| v. | |
| TERESA DELBALSO, *et al.*,<br>       *Respondents* | No. 19-3064 |

## MEMORANDUM

PRATTER, J.                                                                FEBRUARY 16, 2021

Edwin Gago petitions for federal habeas relief pursuant to Section 2254 of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). 28 U.S.C. § 2254. Magistrate Judge Heffley reviewed the record and the parties' submissions. She recommended that the petition be denied because each of the claims is meritless. Mr. Gago objected to the Report and Recommendation, reiterating the substantive arguments raised in his petition.

After reviewing the parties' submissions, the state record, the Report and Recommendation, and Mr. Gago's objections, the Court adopts the Report and Recommendation in part and modifies it in part. It adopts the Report and Recommendation's finding that relief should be denied as to the four claims. However, because two of the claims were not exhausted in the state court proceedings, they are now procedurally barred from this Court's review. For the reasons that follow, Mr. Gago's petition for a writ of habeas corpus and his request for a stay are denied.

### BACKGROUND AND PROCEDURAL HISTORY

Mr. Gago challenges his criminal convictions for attempted first-degree murder, aggravated assault, and several weapons offenses, for which he is currently serving a 15-to-30-year sentence.

1

Mr. Gago's convictions arise out of the shooting of Edward DeOleo Valdez, the boyfriend of Mr. Gago's ex-girlfriend. As recounted by the trial court, Mr. DeOleo was walking to the corner grocery store where he worked as a clerk, when he heard footsteps behind him. Shortly before reaching the store, he turned and recognized the man approaching him as Mr. Gago. Although Mr. Gago was wearing a black mask, Mr. DeOleo identified him based on his body, face, and eyes. He acknowledged Mr. Gago by his nickname, "Mingo," to which Mr. Gago responded, "I told you I would get you in the street, Cabron." As Mr. DeOleo turned to flee, Mr. Gago fired multiple shots, striking Mr. DeOleo in the back, stomach, and head. Video surveillance of the street captured the shooting.

The owner of the grocery store came to his assistance and called Maritza Rodriguez, Mr. DeOleo's girlfriend—and Mr. Gago's ex. Mr. DeOleo repeated to both that "Mingo" shot him. While he was recovering in the hospital from multiple surgeries, Mr. DeOleo confirmed Mr. Gago was the assailant. At trial, he again identified Mr. Gago as the shooter.

At the time of the shooting, Ms. Rodriguez had secured a restraining order against Mr. Gago to protect her and her two sons. She testified that Mr. Gago had repeatedly harassed her, threatened self-harm following their separation, and—while they were together—physically abused her.

The Commonwealth theorized that Mr. Gago was a jealous spurned lover. At trial, Mr. Gago countered that narrative by claiming that it was Ms. Rodriguez who repeatedly sent him messages and sought reconciliation. In support, he produced text and Facebook messages from a number and account allegedly belonging to Ms. Rodriguez. The Commonwealth rebutted that claim by introducing evidence that the originating number from which those messages were sent belonged not to Ms. Rodriguez, but to Mr. Gago's brother.

Mr. Gago also presented alibi testimony from various family members. Two of these witnesses testified that Mr. Gago was not on the street outside the grocery store at the time of the shooting. A third witness presented a novel narrative of the events. She testified that Ms. Rodriguez was present in person at the time of the shooting and that *Ms. Rodriguez* was the aggressor because she "spoke in a bad tone" to Mr. Gago.

The jury rejected Mr. Gago's evidence and theories. He was sentenced to an aggregate term of 15 to 30 years' imprisonment.

Mr. Gago directly appealed his conviction and sentence. The Pennsylvania Superior Court affirmed the sentence, *Commonwealth v. Gago*, No. 19452 EDA 2012, 2013 Pa. Super. Ct. LEXIS 2819 (Pa. Super Ct. Nov. 20, 2013) (unpublished memorandum), and the Pennsylvania Supreme Court denied his petition for allowance of appeal, *Commonwealth v. Gago*, 94 A.3d 1007 (Pa. 2014). Having exhausted his challenges on direct appeal, he then filed a timely petition in 2015 under Pennsylvania's Post Conviction Relief Act, 42 Pa. Cons. Stat. §§ 9541 *et seq*. ("PCRA"). On collateral attack, he raised three challenges regarding his trial counsel. The PCRA Court held an evidentiary hearing, after which it dismissed his petition on the merits in 2017. *Commonwealth v. Gago*, CP-51-CR-0013691-2010, 2017 Phila. Ct. Com. Pl. LEXIS 453 (Ct. Com. Pl. Dec. 18, 2017). The Pennsylvania Superior Court affirmed the dismissal in 2018, *Commonwealth v. Gago*, No. 1230 EDA 2017, 2018 WL 6321536, at *3 (Pa. Super. Ct. Dec. 4, 2018), and the Pennsylvania Supreme Court denied a petition for allowance of appeal in 2019.

Mr. Gago then filed this petition for federal habeas relief. Although he raised some of the same claims of ineffective counsel, his petition also raised new arguments. The Commonwealth filed a response to the petition, arguing that Mr. Gago is not entitled to relief because his claims are either procedurally barred or meritless. Magistrate Judge Heffley issued a Report and

3

Recommendation recommending that the petition be denied as meritless. Mr. Gago then filed his objections.

### STANDARD OF REVIEW

When assessing a magistrate judge's report and recommendations, the reviewing court must make a "de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C). The court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." *Id.*

### I.   Exhaustion and Procedural Default under AEDPA

A prerequisite to federal habeas review is that the state petitioner has exhausted all available remedies under state law, to the extent they exist and are effective. 28 U.S.C. § 2254(b)(1)(A); *Werts v. Vaughn*, 228 F.3d 178, 192 (3d Cir. 2000). This means that "[a]ll claims that a petitioner in state custody attempts to present to a federal court for habeas corpus review must have been fairly presented to each level of the state courts." *Lines v. Larkins*, 208 F.3d 153, 159 (3d Cir. 2000). The exhaustion doctrine is "principally designed to protect the state courts' role in the enforcement of federal law and prevent disruption of state judicial proceedings." *Rose v. Lundy*, 455 U.S. 509, 518 (1982).

When a court is presented with a "mixed" petition—including exhausted and unexhausted claims—*Lundy* requires that the district court dismiss the petition. *Id.* at 523. But, *Lundy* is inapplicable when the petitioner has failed to exhaust state remedies and "the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred." *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991). The claims in such a case, for purposes of federal habeas, are procedurally defaulted. *Id.*

A petitioner can overcome procedural default only in limited circumstances when he can "demonstrate cause for the default and actual prejudice from the alleged violation of federal law" or demonstrate that failure to consider the claim "will result in a fundamental miscarriage of justice." *Id.* at 750. The latter exception requires new and reliable evidence of the petitioner's actual innocence. *Schlup v. Delo*, 513 U.S. 298, 321 (1995). It is an onerous standard to meet.

## II.   Review of Claims under Section 2254

Federal courts are authorized to grant habeas relief in limited circumstances. 28 U.S.C. § 2254(d). Habeas relief is available if the state court proceedings resulted in a decision that was "contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," "involved an unreasonable application of clearly established Federal law," or "involved an unreasonable determination of the facts in light of the evidence presented" in state court. *Id.*

A state court judgment is "contrary to" clearly established federal law when the state court "arrives at a conclusion opposite to that reached by [the United States Supreme] Court on a question of law, or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). For the "unreasonable application" clause to apply, the state court's application of federal law must be objectively unreasonable. *Id.* at 409.

Federal courts reviewing state court proceedings properly and sensibly must afford considerable deference to the state court's legal and factual determinations. *Palmer v. Hendricks*, 592 F.3d 386, 391-92 (3d Cir. 2010). The petitioner has the burden of rebutting this presumption of deference with clear and convincing evidence that the state court's factual determination is not correct. 28 U.S.C. § 2254(d).

### III. Ineffective Assistance of Counsel

Clearly established federal law governing ineffective assistance of counsel claims is set forth in two-prong test in *Strickland v. Washington*, 466 U.S. 668 (1984).

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Id.* at 687. Given the individual nature of each case, each defendant, and each professional, judicial "scrutiny of counsel's performance must be highly deferential." *Id.* at 689. "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* "[A] trial does not have to be perfect to be constitutionally fair." *Marshall v. Hendricks*, 307 F.3d 36, 91 (3d Cir. 2002).

To establish prejudice, the defendant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. Prejudice is evaluated in the light of the totality of the evidence presented at trial. *Kelly v. Rozum*, No. CIV.A. 08-1073, 2009 WL 3245565, at *16 (E.D. Pa. Oct. 6, 2009).

When, as here, the court is reviewing a state prisoner's ineffective assistance of counsel claim under § 2254(d), the court must apply a doubly deferential standard of review. Unreasonableness under *Strickland* is not the same as unreasonableness under § 2254(d). When the state court has addressed counsel's effectiveness, the question is not whether counsel's performance fell below the *Strickland* standard. Instead, it is whether the state court's own

6

application of *Strickland* was unreasonable. *Harrington v. Richter*, 562 U.S. 86, 101 (2011). Petitioner has the burden of showing that the state court applied *Strickland* in an objectively unreasonable way. *Woodford v. Visciotti*, 537 U.S. 19, 25 (2002). This is a more demanding showing than if petitioner's *Strickland* claims were before the Court in the first instance.

### DISCUSSION

Mr. Gago contends that he received constitutionally ineffective assistance of counsel at trial in four separate areas: (1) counsel's failing to object to the trial court's jury instruction on the attempted murder and aggravated assault charges; (2) counsel's opening the door to admitting his prior bad acts evidence; (3) his lawyer's failing to adequately investigate false information Mr. Gago supplied to counsel[1]; and (4) counsel's failing to test the shell casings recovered from the scene.

As a threshold matter, the Pennsylvania courts applied the proper legal standard to Mr. Gago's allegations. The Third Circuit Court of Appeals has held that the Commonwealth's standard for evaluating ineffective assistance claims is identical to the *Strickland* standard. *Werts*, 228 F.3d at 203.

Magistrate Judge Heffley found each of the four instances of alleged ineffective assistance of counsel to be meritless. She also concluded that the Pennsylvania courts' application of *Strickland* in each instance was not unreasonable. Mr. Gago does not raise any new arguments in his objections to suggest that the state courts' application of the *Strickland* standard was in error.

---

[1] As is discussed below, Petitioner's third claim is properly treated as two distinct arguments. *See infra* Section III.

7

I. **Failure to Object to the Trial Court's Jury Instruction on the Attempted Murder Charge**

Mr. Gago maintains his trial counsel was ineffective for failing to object to the trial court's instruction on the attempted murder and aggravated assault charges. He claims that the instructions improperly suggested to the jury that he had shot Mr. DeOleo, and so doing, robbed the jury of its primary function—adjudicating his guilt.

The challenged attempted murder instruction reads as follows:

> Mr. Gago [is] charged with attempted murder. To find him guilty you must find three elements have been proven to you *beyond a reasonable doubt*. Number one, that Mr. Gago did a certain act; that is, that he shot Mr. DeOleo three times in the back, the stomach, the head. That's the first element. Number two, that when he *shot* Mr. DeOleo three times the defendant had the specific intent to kill him; that is, he had a fully informed intent to kill and was conscious of his own intention. And the third element is that the *shooting* constituted a substantial step towards the commission of a killing that the defendant intended to bring about.

Transcript of Record at 69-70, *Commonwealth v. Gago*, No. CP-51-CR-0013691-2010 (Phila. Ct. Com. Pl. Sept. 26, 2011) (emphasis added).

Mr. Gago argues that the word "allegedly" should have preceded the words "shot" and "shooting" in the instructions. The best articulation of his argument is that the failure to modify "shot" and "shooting" impermissibly suggested to the jury that Mr. Gago had indeed shot Mr. DeOleo.

The PCRA court and the Superior Court on appeal both rejected the argument that the instruction as given was erroneous and held that counsel was not ineffective for failing to object. Because there was no error in the instruction, counsel's performance could not be deficient.

In finding there was no error in the instruction, the Superior Court emphasized that the trial court instructed the jury at the outset that each element must be proven beyond a reasonable doubt. *Commonwealth v. Gago*, No. 1230 EDA 2017, 2018 WL 6321536, at *4 (Pa. Super. Ct. Dec. 4, 2018). The order of the elements clarified the logic of the charge. If the jury failed to find that

8

Mr. Gago shot Mr. DeOleo beyond a reasonable doubt—element one—it would not proceed to consider whether Mr. Gago had the specific intent to kill at the time—element two. Mr. Gago's argument glosses over the sequential reasoning the jury had to employ. This makes the challenge meritless.

Moreover, the Superior Court held that the both the language and the order of the instructions "closely tracked the Pennsylvania's Suggested Standard Jury instructions." *Id.* So, the instructions were a presumptively accurate statement of the law and counsel did not err in not objecting. *Commonwealth v. Prosdocimo*, 578 A.2d 1273, 1276-77 (Pa. 1990). Mr. Gago does not present any evidence to suggest otherwise.

To the extent there was any error in the jury instruction, the Superior Court held it was harmless given the overwhelming evidence in favor of conviction. So, counsel's alleged error as articulated by Mr. Gago did not deprive his client of a fair trial and, thus, Mr. Gago did not meet the prejudice prong of *Strickland*. To the contrary, the Superior Court described the evidence in favor of conviction as "overwhelming." *Commonwealth v. Gago*, No. 1230 EDA 2017, 2018 WL 6321536, at *4 (Pa. Super. Ct. Dec. 4, 2018). The Commonwealth introduced video surveillance footage of the shooting, as well as repeated identifications of Mr. Gago as the shooter by the victim who knew him well, including at the time he lay bleeding on the street, at the hospital, and again at trial.

Because Mr. Gago properly raised this claim before the state court and the state court adjudicated it on the merits, the Court reviews the claim under AEDPA's deferential standard. *Slaughter v. Superintendent Phoenix SCI*, 816 F. App'x 658, 661 (3d Cir. 2020). This requires showing that the state court's decision was objectively unreasonable.

9

Under *Harrington*, the Court's inquiry here is limited to considering the arguments or theories in support of the state court's decision and whether it is possible that "fairminded jurists could disagree that those arguments or theories are inconsistent" with United States Supreme Court precedent. 562 U.S. at 102 (2011). This is a high bar to meet. Mr. Gago has not cleared it.

Magistrate Judge Heffley carefully analyzed the Superior Court's decision and found that the jury instruction recited at trial did not materially differ from the Commonwealth's standard instructions. Mr. Gago failed to show that the challenged instruction was erroneous when it directed the jury that it had to find each separate element beyond a reasonable doubt. "[A] single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge." *Cupp v. Naughten*, 414 U.S. 141, 146-47 (1973). Here, the jury was charged fully with the Commonwealth's duty to prove guilt beyond a reasonable doubt. "A jury is presumed to follow its instructions." *Weeks v. Angelone*, 528 U.S. 225, 234 (2000). Such preliminary instructions weigh heavily in favor of finding there was no error in the instruction. *See Howard v. Horn*, 56 F. Supp. 3d 709, 736 (3d Cir. 2014).

"Counsel cannot be deemed ineffective for failing to raise a meritless claim." *Werts*, 228 F.3d at 203. So, because the instructions did not contain error, counsel could not have erred in not challenging them.

And, as Magistrate Judge Heffley very reasonably found, the evidence presented to the jury was sufficient to meet the Commonwealth's burden, even assuming there was error in the instruction. The Court has no doubt that the verdict would have changed had the trial court inserted the word "allegedly" into the instruction. Habeas relief is not available to cure harmless errors. And Mr. Gago has not established that counsel's failure to object to the instruction deprived him

of a fair trial in light of the evidence presented to the jury. Accordingly, the Court concludes that Magistrate Judge Heffley correctly found this ineffectiveness claim was without merit.

## II. Counsel "Opening the Door" to Admitting Prior Bad Acts Evidence

Mr. Gago next argues that trial counsel was ineffective because he "opened the door" to other bad acts evidence.

Counsel sought to rebut the Commonwealth's argument that Mr. Gago was the jealous and violent ex. To reframe the domestic drama narrative, counsel elicited testimony from Ms. Rodriguez that she had previously assaulted Mr. Gago's former wife. Counsel argued that the incident was relevant to undercutting the theory that Ms. Rodriguez wanted nothing to do with her ex. This was a strategic choice to answer the Commonwealth's theory. In so doing, counsel also sought to cast doubt upon a motive Mr. Gago had to shoot Mr. DeOleo. But the testimony had the effect of "opening the door" under Pennsylvania Rule of Evidence 404(b), which then allowed the Commonwealth to introduce evidence of 911 call logs and Ms. Rodriguez's testimony that Mr. Gago was violent.

The PCRA court rejected the argument that counsel was ineffective. *Commonwealth v. Gago*, CP-51-CR-0013691-2010, 2017 Phila. Ct. Com. Pl. LEXIS 453, at *20 (Ct. Com. Pl. Dec. 18, 2017). To the contrary, "[u]nder the circumstances," counsel's efforts to undercut the Commonwealth's jealousy theory had "some reasonable basis" that would serve his client's interest. *Id.* It was immaterial to the review of counsel's performance that the strategy was ultimately unsuccessful. The Superior Court agreed that counsel had a strategy in eliciting the testimony he did—notwithstanding its unintended effect. *Commonwealth v. Gago*, No. 1230 EDA 2017, 2018 WL 6321536, at *4 (Pa. Super. Ct. Dec. 4, 2018).

Because this claim was fairly presented to the state court and adjudicated on its merits, the Court again applies the doubly deferential standard of review. *Slaughter*, 816 F. App'x at 661. Mr. Gago must show that the state court's application of *Strickland* was unreasonable. Magistrate Judge Heffley correctly found that he did not do so.

In hindsight, counsel made a strategic decision that backfired. But the Pennsylvania courts correctly did not engage in Monday morning quarterbacking when they reviewed his performance. Nor may or will this Court second-guess counsel's conduct. *Strickland*, 466 U.S. at 689. At the time, counsel could have stayed silent and not contested the Commonwealth's theory of jealousy— which supplied motive for the jury's consideration. But silence may have signaled to the jury that the defense agreed with the Commonwealth, and there was certainly risk to his client in adopting that approach. The counter—and what counsel opted to do—was muddy the waters a bit to suggest that Ms. Rodriguez was vindictive too. It cannot be said that counsel's strategy was unreasonable, nor were the courts unreasonable in their consideration of this claim.

And, as before, even if counsel's strategy somehow constituted error, Mr. Gago still has not shown that he was prejudiced by the error. He has not established that the outcome would have been different had Ms. Rodriguez not introduced testimony as to prior violent encounters with Mr. Gago. To the contrary, Ms. Rodriguez's testimony constituted cumulative evidence atop ample other evidence in favor of conviction.

So, the Court will adopt the Report and Recommendation's finding that Mr. Gago's second ineffectiveness claim does not merit relief.

### III. Counsel Failed to Adequately Investigate the False Information Petitioner Supplied Him and to Object to Certain Testimony

Mr. Gago's third ineffectiveness claim is properly split into two arguments. The first is that counsel was ineffective when he acted on false information that Mr. Gago had supplied him. The second is that counsel failed to object to certain alleged hearsay testimony.

#### A. Counsel Relied on False Evidence Supplied by Mr. Gago

At trial, Mr. Gago provided his counsel with his cell phone ostensibly to establish that Ms. Rodriguez was seeking to romantically reconcile with him shortly before the shooting. The Commonwealth rebutted this evidence by establishing that the phone number Mr. Gago claimed to be Ms. Rodriguez's was actually his brother's. So, in attempting to present supposed-exculpatory evidence provided by his client, counsel unwittingly undercut the case and damaged his credibility. *See Commonwealth v. Gago*, CP-51-CR-0013691-2010, 2017 Phila. Ct. Com. Pl. LEXIS 453, at *8 (Ct. Com. Pl. Dec. 18, 2017). In his petition, Mr. Gago now faults his counsel for not independently verifying the evidence that Mr. Gago supplied to him.

Magistrate Judge Heffley recommended that this claim be denied as meritless. The Court, however, must first address a gating issue to Mr. Gago presenting this claim for federal habeas relief.

Regardless of the merits—or lack thereof—of this claim, Mr. Gago waived it because he did not properly present it to the state courts. Mr. Gago has the burden of proving exhaustion of all available state remedies. 28 U.S.C. § 2254. He did not raise this claim on direct appeal. *Commonwealth v. Gago*, No. 1230 EDA 2017, 2018 WL 6321536, at *3 (Pa. Super. Ct. Dec. 4, 2018). Likewise, he did not pursue it all the way through his state collateral challenge, opting not to raise it on appeal from the PCRA court's denial. Because Mr. Gago did not litigate his claim through one full round of the Commonwealth's established review process, he did not "fairly

13

present" it to the state court. *Lambert v. Blackwell*, 387 F.3d 210, 233 (3d Cir. 2004) (exhaustion in Pennsylvania requires a petitioner to present a claim to the trial court and the Pennsylvania Superior Court).

Although the issue is best addressed by the state courts, a federal court may dismiss a claim as procedurally barred when state law would unambiguously deem it defaulted. *Carter v. Vaughn*, 62 F.3d 591, 595 (3d Cir. 1995). Relevant here, an issue is waived if a petitioner fails to raise it and it could have been raised in a habeas corpus proceeding. 42 Pa. Cons. Stat. § 9544(b).

The claim is now barred by Pennsylvania's time-bar and waiver provisions so Mr. Gago cannot re-assert it there. The PCRA statute of limitations provides that any petition "including a second or subsequent petition, shall be filed within one year of the date the judgment becomes final . . . ." 42 Pa. Cons. Stat. Ann. § 9545(b)(1). There are limited exceptions to this statute of limitations but they do not apply here and Mr. Gago does not assert that they apply. *Id.* § 9545(b)(i)-(iii).

A judgment becomes final "at the conclusion of direct review" or "at the expiration of time for seeking the review." *Id.* § 9545(b)(3). "A petition for a writ of certiorari seeking review of a judgment of a lower state court that is subject to discretionary review by the state court of last resort is timely when it is filed with the Clerk within 90 days after entry of the order denying discretionary review." Sup. Ct. R. 13(1). The Pennsylvania Supreme Court denied Mr. Gago's petition for allowance of appeal on June 12, 2014. *Commonwealth v. Gago*, 94 A.3d 1007 (Pa. 2014). There is nothing in the record to suggest that he then sought certiorari from the United States Supreme Court. Accounting for the 90 days, judgment here became final on September 10, 2014. So, Mr. Gago's second PCRA petition would have had to be filed before September 10, 2015 to be timely. Six years later, however, his unexhausted claims are barred by the PCRA statute

14

of limitations. *See Butler v. Johnson*, No. CIV. A.00-2718, 2001 WL 856713, at *2 (E.D. Pa. July 23, 2001).

Because the Pennsylvania courts would refuse to hear the unexhausted claims, exhaustion now would be futile. Mr. Gago cannot amend his initial PCRA petition, which the PCRA court has already declined. And he cannot file a second PCRA petition because it would be barred by the statute of limitations. Nor does he make any showing of cause or prejudice to excuse the default, *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977), or that failure to consider the claim will result in a fundamental miscarriage of justice, *Coleman*, 501 U.S. at 750.

Even if the claim regarding counsel's decision to rely on evidence supplied to him by his client were not procedurally defaulted, it would still be meritless, as the Report and Recommendation explains. "The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions." *Muff v. Dragovich*, 310 F. App'x 522, 525 (3d Cir. 2009). *Strickland* logically counsels that "when the facts that support a certain potential line of defense are generally known to counsel because of what the defendant has said, the need for further investigation may be considerably diminished or eliminated altogether." 466 U.S. at 691. The PCRA court found that Mr. Gago had "provided his counsel with fabricated evidence." *Commonwealth v. Gago*, CP-51-CR-0013691-2010, 2017 Phila. Ct. Com. Pl. LEXIS 453, at *26 (Ct. Com. Pl. Dec. 18, 2017). In this case, counsel was entitled to at least rely on the representation from his client about the owner of the particular phone number.

Whatever error in oversight made by counsel in not independently verifying the phone number, it does not meet the *Strickland* prejudice standard. (Certainly, it was at least a moment of disheartening professional discomfort for counsel). It could have damaged Mr. Gago's credibility in the eyes of the jury. But, given the weight of the evidence in favor of conviction,

had counsel not used this evidence supplied by Mr. Gago himself, it is unlikely the outcome would have differed anyway. So, the state court did not unreasonably apply *Strickland* in denying Mr. Gago relief because his attempt to deceive his counsel and the trial court backfired.

Were the Court to consider the merits of this claim, it would find them lacking here. But because this claim is procedurally defaulted, it will modify the R&R accordingly to deny the claim on separate grounds.

### B. Counsel Did Not Object to Admitting Assistant District Attorney's Testimony

As to the second sub-claim, Mr. Gago asserts counsel was ineffective for failing to object to the admission of testimony of an assistant district attorney who was present when her colleague called the phone number Mr. Gago claimed to be Ms. Rodriguez's. The ADA testified that she learned the number belonged to Mr. Gago's brother because she overheard the call. *Commonwealth v. Gago*, No. 1230 EDA 2017, 2018 WL 6321536, at *5 (Pa. Super. Ct. Dec. 4, 2018). The Pennsylvania Superior Court rejected the ineffectiveness claim as a matter of Pennsylvania evidence law and held that the testimony was not offered for a hearsay purpose—i.e., the veracity of the contents of the conversation—but to show that the owner of the phone number was not Ms. Rodriguez. So, the state court rejected the merits of the claim.

Even if the Pennsylvania courts had erred and determined that the testimony *was* hearsay or was otherwise inadmissible, Magistrate Judge Heffley found that Mr. Gago's objection to a ruling of state law is not cognizable on habeas review. *Estelle v. McGuire*, 502 U.S. 62, 67 (1991) ("We have stated many times that 'federal habeas corpus relief does not lie for errors of state law.'"); *Priester v. Vaughn*, 382 F.3d 394, 402 (3d Cir. 2004) (holding that habeas review is not available to reexamine state court determinations of state law questions). This Court is bound by

the state court's determination that the testimony was not hearsay and its admission was proper. *Devine v. Cameron*, No. CV 09-171, 2015 WL 5063958, at *10 (E.D. Pa. Aug. 26, 2015).

So, Mr. Gago cannot meet the first prong of *Strickland*—that his counsel's performance was deficient. Accordingly, the Court concludes that Magistrate Judge Heffley correctly found that this ineffectiveness claim must also fail.

### IV. Counsel Did Not Have Ballistic Testing Performed on the Shell Casing

Mr. Gago's final claim is that counsel was ineffective for failing to test the shell casings recovered from the scene of the shooting. Magistrate Judge Heffley found that Petitioner was not entitled to relief because the claim was meritless, and the state courts did not unreasonably apply *Strickland*. Although the Court will deny Mr. Gago relief on this claim, it is because, again, he did not exhaust this final claim, which is now procedurally barred. Nor did he establish cause and prejudice or a fundamental miscarriage of justice to excuse the default.

At the PCRA evidentiary hearing, Mr. Gago claimed his trial counsel was ineffective for failing to obtain DNA testing of the shell casings recovered from the scene. The PCRA court denied this claim as "too speculative to merit relief." *Commonwealth v. Gago*, CP-51-CR-0013691-2010, 2017 Phila. Ct. Com. Pl. LEXIS 453, at *30 (Ct. Com. Pl. Dec. 18, 2017). But Mr. Gago did not raise the claim on appeal from the PCRA court. Nor did he raise any argument about the shell casings on direct appeal.

As discussed in Section III.A, *supra*, Mr. Gago waived this claim when he failed to appeal to the Superior Court following the PCRA court's rejection of the claim. 42 Pa. Cons. Stat. § 9544(b). And, because he is now well beyond the one-year limitations period for PCRA, his ineffectiveness claim about the shell casings testing is procedurally defaulted. *Coleman*, 501 U.S. at 735 n.1. Mr. Gago does not establish cause or prejudice to excuse his default here.

So, the Court modifies the Report and Recommendation to the extent it denied the claim as meritless.[2]

## V. Mr. Gago's Request for a Stay and Appointment of Counsel

Mr. Gago initially requested that the federal action be stayed so that he could exhaust certain claims pending in state court. Doc. No. 1 at 4. In his resubmitted petition, Doc. No. 4, he stated that he did not have any petition or appeal pending in any court, state or federal, for the judgment he was challenging. Doc. No. 4. at 13.[3]

Because Magistrate Judge Heffley found each of his arguments to be "plainly meritless," she recommended that the motion to stay be denied, to the extent there were any outstanding claims in state court. For the same reason, she also recommended that the Court deny his request for the appointment of counsel. A district court abuses "its discretion if it granted a stay when the unexhausted claims are plainly meritless." *Rhines v. Weber*, 544 U.S. 269, 270 (2005). That is

---

[2] Even if the Court were to reach the merits of this final ineffectiveness challenge—setting aside the procedural default—the state courts did not unreasonably apply *Strickland* to reject the claim. Mr. Gago speculates that the shell casings would be consistent with other shootings in the area and that such a finding would, presumably, exonerate him. The PCRA Court (the only court to whom Mr. Gago presented the claim) found Mr. Gago could not establish the prejudice prong of his ineffectiveness claim. That was because of the overwhelming evidence relied on by the jury to convict him, including testimony of the victim and his repeated identifications of Mr. Gago, witness statements, and a video recording of the shooting.

In his objections to the Report and Recommendation, Mr. Gago notes he was not apprehended at the scene nor was he arrested with the weapon. But a weapon was never recovered in relation to this crime, which Mr. Gago admits. So, it is unclear what purpose ballistics testing would serve, particularly when the Commonwealth did not rely on ballistics evidence to secure a conviction. Even were the Court to reach the merits here, Mr. Gago would not be entitled to relief on this claim.

Mr. Gago also appears to fault his counsel for not "interview[ing] the witnesses and present[ing] them." But this is an entirely separate and new claim from the ballistics testing, and one which Mr. Gago appears to raise for the first time in his objections. Not only does it appear meritless, it is also procedurally defaulted. *See Anderson v. Harless*, 459 U.S. 4, 6 (1982) ("[P]etitioner must have 'fairly presented' to the state courts the 'substance' of his federal habeas corpus claim.").

[3] Because he initially filed using the incorrect form, the Court supplied him with the proper habeas petition. The present petition does not list any pending petitions or appeals. Doc. No. 4. at 13.

the case here. Accordingly, the Court will deny Mr. Gago's request for a stay, and, for the same reasons, his request for appointment of counsel.

## CONCLUSION

For the reasons set out in this memorandum, the Court denies Mr. Gago's Petition for Writ of Habeas Corpus. Magistrate Judge Heffley's Report and Recommendation is adopted in part and modified in part. The Court approves and adopts those parts of the Report and Recommendation recommending denial of Mr. Gago's ineffective assistance of counsel claims for failing to object to the jury instruction, opening the door to prior bad acts evidence, and failing to object to the admission of the ADA's testimony. The Court modifies those parts of the Report and Recommendation recommending denial of Mr. Gago's ineffective assistance of counsel claims for failing to investigate the false information supplied by his client and failing to test the shell casings to the extent Magistrate Judge Heffley reached the substance of those claims. Those claims are procedurally defaulted, and Mr. Gago does not demonstrate cause and prejudice to excuse the default. Relief on these claims is denied.

The Petition is thus denied in all respects. Because Mr. Gago has not made "a substantial showing of the denial of a constitutional right," a certificate of appealability will not issue for these claims. 28 U.S.C. § 2253(c)(2).

The Court enters the accompanying order.

BY THE COURT:

GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE